UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **KRISANNE HASKEW,** | Civil No. _____ |
| Plaintiff, | Jury Trial Demanded |
| v. | |
| **SOUTHWEST AIRLINES CO.** and **IAM AIR TRANSPORT DISTRICT 142,** a/k/a **DISTRICT LODGE 142 OF THE INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS AFL-CIO,** | |
| Defendants. | |

**PLAINTIFF'S COMPLAINT FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT, VIOLATIONS OF THE NEW MEXICO HUMAN RIGHTS ACT, BREACH OF THE DUTY OF FAIR REPRESENTATION, VIOLATION OF THE COLLECTIVE BARGAINING AGREEMENT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, AND FOR INJUNCTIVE RELIEF**

Plaintiff, Krisanne Haskew ("Plaintiff"), by and through counsel, LAW OFFICE OF JAMISON BARKLEY, LLC and LEGAL SOLUTIONS OF NEW MEXICO, LLC (McKenzie St. Denis), and makes this Complaint for Violations of the Americans with Disabilities Act ("the ADA"), 42 U.S.C. § 12101-12213, Violations of the New Mexico Human Rights Act ("the NMHRA"), NMSA 1978, §§ 28-1-1 to -14 (1969), Breach of the Duty of Fair Representation, Violation of the Collective Bargaining Agreement, Breach of the Covenant of Good Faith and Fair Dealing, and Injunctive Relief against Southwest Airlines Co. ("Southwest") and IAM Air Transport District 142 a/k/a District Lodge 142 of the International Association of Machinists and

Aerospace Workers AFL-CIO ("IAM" or "the Union"). In support of her claims, Ms. Haskew states as follows:

## JURISDICTION AND VENUE

1. Plaintiff is an individual residing in Bernalillo County, New Mexico.

2. During all material times herein, Plaintiff was employed by Southwest and conducted her duties in New Mexico.

3. Defendant Southwest is a foreign for-profit corporation doing business in the State of New Mexico.

4. The acts giving rise to liability in this case took place in New Mexico.

5. Defendant's principal place of business in New Mexico is located in Santa Fe County, New Mexico.

6. Defendant's registered agent is located in Santa Fe County, New Mexico.

7. Defendant IAM Air Transport District 142 is a labor organization representing customer service employees at Southwest, including Plaintiff.

8. Defendants are "covered entities" as defined by the ADA. See 42 U.S.C. § 12111(2).

9. The IAM and Southwest Airlines are parties to a collective bargaining agreement benefitting customer service employees at Southwest, including Plaintiff.

10. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to the ADA, see 42 U.S.C. § 12117(a), the Railway Labor Act ("the RLA"), see 45 U.S.C. §§ 151 to 165, Section 301 of the Labor Management Relations Act, see 29 U.S.C. § 185(a), and 28 U.S.C. § 1331.

11. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

## GENERAL FACTUAL ALLEGATIONS

13. On or about February 8, 1993, Southwest hired Plaintiff as a customer service representative located at the Albuquerque call center.

14. From her hire until she was placed on unpaid leave in August 2016, Plaintiff received numerous awards for "positively outrageous service" as well as attendance.

15. From her hire until she was placed on unpaid leave in August 2016, Plaintiff was never disciplined or written up and had excellent performance reviews.

16. Plaintiff's job as a customer service representative required her to sit at a desk and respond to customer emails and phonecalls.

17. In 2002, Plaintiff suffered an injury to her left shoulder due to the repetitive motions required by her job duties.

18. Plaintiff's shoulder injury was classified as an on-the-job injury in 2010 and has been addressed pursuant to worker's compensation rules and regulations.

19. Ms. Haskew's shoulder injury has never resolved despite five surgeries and additional medical treatment.

20. On September 17, 2015, Ms. Haskew completed a Southwest Airlines ADA Medical Information Form.

21. Pursuant to the ADA Medical Information Form, Ms. Haskew requested an accommodation that she be assigned a maximum eight hours of work per day with no overtime.

22. Plaintiff's request was made pursuant to her doctor's recommendation.

23. Plaintiff submitted a doctor's note with her request for accommodation supporting her need to work a maximum of eight hours per day.

24. Plaintiff's doctor recommended that she not work for more than eight hours per day to alleviate her severe pain and mitigate continued damage to her shoulder by her job duties.

25. When Ms. Haskew requested the accommodation in September 2015, she had already undergone three surgeries on her shoulder.

26. On October 16, 2015, Southwest denied Ms. Haskew's accommodation request and stated that working overtime for extended periods during peak workloads is an essential function of the customer service representative position.

27. Working overtime for extended periods is not an essential function of the customer service representative position.

28. Southwest advised Plaintiff that, when she was scheduled to work for more than eight hours, she could trade shifts or give away her shift pursuant to her respective Collective Bargaining Agreement ("CBA"), or request a leave of absence.

29. After Southwest denied her request for accommodation, Ms. Haskew traded shifts, gave away shifts, or used vacation leave for any overtime she was scheduled.

30. On March 24, 2016, Southwest notified Plaintiff and all customer service representatives in Albuquerque they could be scheduled for significant mandatory overtime, to include five or more days per week of overtime.

31. On March 28, 2016, Plaintiff filed her first charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Southwest, asserting disability discrimination based on the denial of her request to work only eight hours per day.

32. Plaintiff continued to assert her rights before Southwest and the Union.

33. On the afternoon of Friday, August 19, 2016, after Plaintiff had more than twenty-three years at the company, Southwest (Tracy Velasquez and Judy Pena) advised Plaintiff via voicemail that it was placing her on unpaid leave due to her inability to work more than eight hours a day.

34. Southwest directed Plaintiff to return her employee badge the following Monday.

35. The CBA allows customer service representatives to give away any overtime they are scheduled to other employees.

36. At the time she received the voicemail placing her on leave, Southwest had been in receipt of Plaintiff's doctor's recommendation that she not work more than eight hours per day for eleven months, since her initial request for accommodation in September 2015.

37. Plaintiff informed Southwest that she did not want to take leave and she wanted to continue working as long as she was only scheduled eight hours a day, with no overtime.

38. Plaintiff complained to her supervisor and other agents of Southwest that she did not want to go on leave but wanted to continue working.

39. Southwest did not respond to Plaintiff's complaints.

40. When Plaintiff appealed to the Union to assist her in asserting her rights under the CBA, the Union declined to do so.

41. The Union failed to process a grievance on Plaintiff's behalf.

42. Plaintiff had multiple conversations with the Union in August and September of 2016 but it failed to represent her or assert her rights under the CBA.

43. On August 25, 2016, Plaintiff filed a second Charge of Discrimination against Southwest in which she identified being placed on leave as retaliation for the filing of her first complaint and continued assertion of her rights under the ADA to both Southwest and the Union.

44. On September 2, 2016, Southwest advised Ms. Haskew to provide a doctor's note for each medical appointment she attended; Plaintiff complied.

45. In September 2016, Plaintiff resigned from the Board of Directors for the Ronald McDonald House for which she had served for over seven years as Southwest's representative.

46. On September 29, 2016, Ms. Haskew was required to undergo a fourth surgery on her left shoulder.

47. On October 5, 2016, Southwest began paying Plaintiff out of her accrued sick leave and did so until it was exhausted.

48. On November 4, 2016, Southwest advised Plaintiff that she would no longer be covered under its insurance plan and would lose her medical, dental, and vision coverage.

49. On November 30, 2016, Southwest (Shelly Abercrombie) left Plaintiff a voicemail warning that she had not submitted a doctor's note to excuse her from work in November, she was considered a no show and for which she could be terminated.

50. Plaintiff had in fact submitted her doctor's note to Southwest in early November but resubmitted the documentation a second time after receiving Ms. Abercrombie's message.

51. On April 6, 2017, Plaintiff filed a third charge of discrimination against Southwest alleging continued disability discrimination and retaliation.

52. On May 1, 2017, Plaintiff filed her first charge of discrimination with the EEOC against the Union, alleging that she was not represented or accommodated by the Union because of her disability.

53. On May 15, 2017, the Union advised Plaintiff she needed to pay dues of two dollars per month or lose her job.

54. On August 16, 2017, Ms. Haskew had a fifth surgery on her left shoulder.

55. In August 2018, Southwest advised Plaintiff that she had accumulated "no contact no shows" and issued her written discipline despite her continued submittal of doctor's notes.

56. The Union again failed to process a grievance on Plaintiff's behalf for the discipline despite her inquiries.

57. On November 8, 2018, the EEOC issued a Determination that reasonable cause existed that the Union discriminated against Plaintiff based on her disability.

58. On November 20, 2018, the EEOC issued a Determination that reasonable cause existed that Southwest discriminated against Plaintiff by denying her a reasonable accommodation.

59. On November 28, 2018, the EEOC issued a Determination that reasonable cause existed that Southwest retaliated against Plaintiff for her protected activity in violation of the ADA.

60. The EEOC issued a Notice of Right to Sue on May 14, 2019.

61. Plaintiff's Complaint is timely filed.

### I. MULTIPLE VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT, AS AMENDED, 42 U.S.C. §§ 12101-12213, AGAINST BOTH DEFENDANTS SOUTHWEST AND IAM

62. Plaintiff incorporates the foregoing paragraphs as if fully stated herein.

63. Plaintiff's shoulder injury constitutes a disability as defined by the ADA. See 42 U.S.C. § 12102(1).

64. Plaintiff is otherwise qualified to perform her job and able to perform its essential functions, with or without accommodations: for twenty-three years she performed her job with an excellent performance record.

65. Plaintiff is a qualified individual with a disability.

66. Plaintiff requested a reasonable accommodation from Southwest multiple times to work only eight hours per day with no mandatory overtime.

67. Southwest failed to make an accommodation for Plaintiff.

68. Plaintiff's requested accommodation would cause no undue hardship on Southwest or the Union.

69. There was no reasonable basis for Southwest to deny Plaintiff's requested accommodation.

70. Defendants implemented and contracted for a policy and/or practice of requiring mandatory overtime for disabled employees that was not consistent with business necessity.

71. Plaintiff's protected status was a motivating factor in Defendants' placement of her on unpaid leave.

72. Southwest allows other non-disabled employees to shift trade, give away shifts, or take leave to avoid mandatory overtime.

73. Defendant IAM failed to represent or accommodate Plaintiff in violation of the ADA.

74. Both Defendants discriminated against Plaintiff in violation of her rights under the ADA.

75. Defendants subjected Plaintiff to a hostile work environment on the basis of her disability and because of her protected activity.

76. Plaintiff engaged in protected activity under the ADA including but not limited to filing charges of discrimination with the EEOC and complaining of discrimination to Southwest and the Union.

77. Defendant Southwest retaliated against Plaintiff for her protected activity including but not limited to placing her on unpaid leave, subjecting her to a hostile work environment, and disciplining her.

78. Defendant IAM retaliated against Plaintiff by creating a hostile work environment and otherwise.

79. Plaintiff was actually damaged by Defendant's multiple violations of the ADA and Defendants are both liable under each discrete act, hostile work environment, and retaliation theories.

80. Defendants discriminated against Ms. Haskew on the basis of her disability.

81. Defendants took these actions with the intent to discriminate against Ms. Haskew.

82. Defendants acted with malice or reckless indifference to Plaintiff, her disability, and her rights under the ADA.

83. Defendants had a pattern and practice of discriminating against individuals with disabilities.

84. Southwest's pattern and practice of discrimination against employees with disabilities is evident in its mandatory overtime policy and its refusal to allow reasonable accommodations therefrom for qualified individuals.

85. Defendants' culpability renders them liable for punitive damages.

86. Alternatively, Defendants' policies had an adverse impact on Plaintiff as a disabled individual.

87. As a direct and proximate result of the Defendants' multiple violations of the ADA, Ms. Haskew has suffered and continues to suffer damages, including but not limited to loss of earnings (front pay and back pay), loss of benefits, lost opportunities, emotional distress, and other harms.

88. Plaintiff is also entitled to reinstatement from leave and a return to her paying position as a customer service representative.

89. Plaintiff requests all available remedies under the ADA including punitive damages.

## II. MULTIPLE VIOLATIONS OF THE NEW MEXICO HUMAN RIGHTS ACT, NMSA 1978, §§ 28-1-1 to -14, AGAINST BOTH DEFENDANTS SOUTHWEST AND IAM

90. Plaintiff incorporates the foregoing paragraphs as if fully stated herein.

91. In addition to disability discrimination under the ADA, Plaintiff alleges disability discrimination under the NMHRA.

92. Defendants have discriminated against Ms. Haskew on the basis of her disability in violation of NMSA 1978, §§ 28-1-7(A), 28-1-7(I)(1)-(2), and 28-1-7(J).

93. Defendants are both liable under each discrete act, hostile work environment, and retaliation theories under the NMHRA.

94. As a direct and proximate result of the Defendants' multiple violations of the NMHRA, Ms. Haskew has suffered and continues to suffer damages, including but not limited to loss of earnings (front pay and back pay), loss of benefits, lost opportunities, emotional distress, and other harms.

95. Plaintiff is also entitled to reinstatement from leave and a return to her paying position as a customer service representative.

96. Plaintiff requests all available remedies under the NMHRA.

## III. VIOLATION OF THE DUTY OF FAIR REPRESENTATION AGAINST DEFENDANT IAM

97. Plaintiff incorporates the foregoing paragraphs as if fully stated herein.

98. The Union has the exclusive duty to represent the employees in Plaintiff's bargaining unit at Southwest.

99. The Union has the duty to represent all of its employee members without discrimination or hostility.

100. Southwest violated the CBA when it put Plaintiff on unpaid leave.

101. Southwest violated the CBA when it disciplined Plaintiff.

102. When she was placed on leave, Plaintiff advised her Union Steward immediately.

103. The Union refused to investigate and/or process Plaintiff's grievance.

104. The Union had a duty to represent Plaintiff.

105. The Union's breach of duty to Plaintiff undermined the grievance process.

106. The Union's conduct in not processing a grievance on Plaintiff's behalf was arbitrary, invidiously discriminatory, and/or in bad faith.

107. Defendants caused proximate damages to Plaintiff to include lost wages and other economic losses.

108. Plaintiff requests all available remedies, including punitive damages to the fullest extent available.

### IV. VIOLATION OF THE COLLECTIVE BARGAINING AGREMENT AGAINST DEFENDANT SOUTHWEST

109. Plaintiff incorporates the foregoing paragraphs as if fully stated herein.

110. The IAM and Southwest are parties to a CBA benefitting customer service employees at Southwest, including Plaintiff.

111. Plaintiff is a customer service employee at Southwest and part of the bargaining unit covered by the CBA.

112. The CBA is a valid contract.

113. The CBA prohibited discriminatory conduct by Defendants.

114. The CBA further provided that customer service representatives were authorized to shift trade or give away mandatory overtime.

115. Southwest breached the CBA by not allowing Plaintiff to shift trade or give away mandatory overtime and forcing her to take unpaid leave because of her inability to work overtime.

116. Southwest violated the CBA by discriminating against Plaintiff on the basis of her disability.

117. Southwest violated the CBA by disciplining Plaintiff.

118. Southwest's conduct in breaching the CBA was malicious, reckless, wanton, oppressive, or fraudulent.

119. Southwest caused proximate damages to Plaintiff to include lost wages and other economic losses.

120. Plaintiff requests all available remedies, including punitive damages to the fullest extent available.

### V.  VIOLATION OF THE COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST DEFENDANT SOUTHWEST

121. Plaintiff incorporates the foregoing paragraphs as if fully stated herein.

122. The CBA is a valid contract.

123. Southwest sought to prevent the CBA's performance or to withhold its benefits from Plaintiff.

124. Southwest acted in bad faith in performing the CBA.

125. Southwest caused proximate damages to Plaintiff to include lost wages and other economic losses.

126. Plaintiff requests all available remedies, including punitive damages.

## VI.     CLAIM FOR INJUNCTIVE RELIEF AGAINST BOTH DEFENDANTS

127.   Plaintiff incorporates the foregoing paragraphs as if fully stated herein.

128.   Plaintiff is still an employee of Southwest.

129.   Plaintiff has been on unpaid leave since August 19, 2016.

130.   Southwest's placement of Plaintiff on unpaid leave is contrary to law, her rights under the ADA and NMHRA, and a violation of the CBA.

131.   The Union's failure to investigate and/or pursue a grievance on Plaintiff's behalf is a violation of its duty of fair representation.

132.   Plaintiff has been gravely damaged by Defendants' conduct outlined herein; namely, she has not been allowed to work or paid for approximately three years.

133.   Plaintiff respectfully requests the Court issue an injunction requiring the Union to assert her rights under the CBA in a fair and reasonable manner.

134.   Plaintiff further requests the Court enter an injunction requiring Southwest to reinstate her to customer service representative consistent with her rights under the ADA and CBA.

135.   Plaintiff asks for all other relief that is just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A. Judgment in Plaintiff's favor on all counts;

B. An award of compensatory damages;

C. An award of her reasonable attorneys' fees;

D. Punitive damages as allowed by law;

13

E. An award of costs, as well as pre-and post-judgment interest on any amounts recovered herein;

F. An injunction requiring the Union to represent her fairly;

G. Reinstatement;

H. Any other damages allowed by law; and

I. Any other further relief the Court deems just and proper.

PLAINTIFF DEMANDS A JURY TRIAL.

Respectfully submitted,

LAW OFFICE OF JAMISON BARKLEY, LLC

*/s/ Jamison Barkley*
316 Garfield. St.
Santa Fe, NM 87591
(505) 994-9602
jamison@jamisonbarkley.com

AND

Legal Solutions of New Mexico, LLC

*/s/ McKenzie St. Denis*
McKenzie St. Denis
8214 2nd Street NW, Ste. A
Albuquerque, NM 87114
(505) 445-4444
(505) 213-6551
*Plaintiff's Counsel*