IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KRISANNE HASKEW,

     Plaintiff,

v.                                                 Civ. No: 19-00732-JAP/LF

SOUTHWEST AIRLINES COMPANY,

     Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff Krisanne Haskew seeks damages for purported violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, and the New Mexico Human Rights Act ("NMHRA"), NMSA 1978 §§ 28-1-1 to 14 (1969), by her employer, Defendant Southwest Airlines Company ("Southwest").[1] On November 22, 2019, Southwest moved to dismiss Plaintiff's claims arguing, *inter alia*, that the Court lacks subject matter jurisdiction over Plaintiff's claims under the Railway Labor Act.[2] The Court concludes that Plaintiff's retaliation claims under the ADA and NMHRA are not preempted by the Railway Labor Act, and thus the Court has subject matter jurisdiction over those claims. The Court further concludes that it lacks subject matter jurisdiction over Plaintiff's disability discrimination claims under the ADA and NMHRA, which are preempted by the Railway Labor Act. Accordingly, the Court will grant in part and deny in part Southwest's Motion.

---

[1] *See* PLAINTIFF'S FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT, VIOLATIONS OF THE NEW MEXICO HUMAN RIGHTS ACT, BREACH OF THE DUTY OF FAIR REPRESENTATION, AND FOR INJUNCTIVE RELIEF ("First Amended Complaint" or "FAC") (Doc. 28).

[2] *See* DEFENDANT SOUTHWEST AIRLINES CO.'S MOTION TO DISMISS AND BRIEF IN SUPPORT ("Motion") (Doc. 31). The Motion is fully briefed. *See* PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT SOUTHWEST'S MOTION TO DISMISS ("Response") (Doc. 35); DEFENDANT SOUTHWEST AIRLINES CO.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS ("Reply") (Doc. 36).

BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint, which the Court accepts as true and views in the light most favorable to Plaintiff. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1147–48 (10th Cir. 2015).

In February 1993, Southwest hired Plaintiff as a customer service representative at its call center in Albuquerque, New Mexico. FAC at 3. As a customer service representative, Plaintiff responded to customer emails and phone calls. *Id.* Approximately nine years after she began working for Southwest, Plaintiff suffered an injury to her left shoulder due to the repetitive motions required by her job. *Id.*

On September 17, 2015, Plaintiff completed a Southwest Airlines ADA Medical Information Form. *Id.* In that form, she requested a medical accommodation. *Id.* In particular, Plaintiff asked that she be assigned a maximum of eight hours of work per day with no overtime. *Id.* Plaintiff submitted her doctor's note with her ADA Medical Information Form. *Id.* At that time, Plaintiff had already undergone three shoulder surgeries. *Id.* at 4.

On October 16, 2015, Southwest denied Plaintiff's accommodation request on the basis that working overtime for extended periods during peak workloads is an essential function of the customer service representative position. *Id.* Plaintiff disagrees that working overtime for extended periods is an essential function of that position. *Id.*

Although Southwest denied Plaintiff's accommodation request, it informed Plaintiff that when she was scheduled to work more than eight hours she could trade or give away her shift as provided for by her respective Collective Bargaining Agreement ("CBA"), or request a leave of absence. *Id.* Accordingly, when Plaintiff was scheduled to work more than eight hours in a day, she traded shifts, gave away shifts, or used her vacation time. *Id.*

Southwest later notified Albuquerque customer service representatives that they could be scheduled for mandatory overtime—potentially five or more days per week. *Id.* Within a week of that notification, on March 28, 2016, Plaintiff filed her first charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Southwest. *Id.* In that charge, she asserted that Southwest discriminated against her due to her disability by denying her request to work a maximum of eight hours per day. *Id.*

On August 19, 2016, Southwest placed Plaintiff on unpaid leave. *Id.* at 4–5. Plaintiff complained to her supervisor that she did not want to go on unpaid leave, but that she wanted to work only eight hours per day with no mandatory overtime. *Id.* at 5. Southwest did not respond to her complaints. *Id.* Plaintiff also sought assistance from the District Lodge 142 of the International Association of Machinists and Aerospace Workers AFL-CIO ("IAM"). *Id.* at 2, 5. IAM represents Plaintiff for collective bargaining purposes. *Id*. at 2. Plaintiff requested that IAM help her assert her rights under the CBA, but IAM declined to do so. *Id.* at 5. IAM also declined to file a grievance on her behalf. *Id.*

Over the next year, Plaintiff filed two more EEOC complaints against Southwest. On August 25, 2016, Plaintiff filed a second charge of discrimination against Southwest alleging that Southwest retaliated against her for the filing of her first EEOC complaint. *Id.* On April 6, 2017, Plaintiff filed her third charge of discrimination against Southwest, that time claiming disability discrimination and retaliation. *Id.* at 6.

PROCEDURAL HISTORY

On August 11, 2019, Plaintiff initiated this lawsuit in federal district court.[3] She initially sought damages and injunctive relief against Southwest and IAM. FAC at 1. Thereafter, Plaintiff stipulated to the dismissal of IAM.[4]

In her Amended Complaint, Plaintiff alleges that Southwest violated the ADA and NMHRA. FAC at 7–10. Plaintiff maintains that (1) Southwest failed to provide her with a reasonable accommodation; (2) Southwest discriminated against her in the terms of the CBA; (3) Southwest created a hostile work environment; and (4) Southwest retaliated against her for engaging in protected activity. *See* FAC at 7–10. Southwest moved to dismiss those claims under Federal Rule of Civil Procedure ("Rule") 12(b)(6) and Rule 12(b)(1). Southwest argues that Plaintiff's claims "are preempted by federal labor law[ ], were brought out-of-time, and fail as a matter of law." Mot. at 1.

After the Motion was fully briefed, the Court requested supplemental briefing on Southwest's preemption argument.[5] Specifically, the Court requested that (a) Plaintiff state separately and clearly her claims against Southwest, and that both parties:

    (b) identify[] whether each claim is a "minor" or "major" dispute under the Railway Labor Act, 45 U.S.C. § 151 *et seq.*, and under the analysis set forth in *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994), and its progeny; and

    (c) address[] whether and to what extent the following cases should inform the Court's analysis: *Mowry v. United Parcel Serv.*, 415 F.3d 1149 (10th Cir. 2005), *Adams v. Am. Airlines, Inc.*, 202 F.3d 281 (10th Cir. 2000) (unpublished), and *Carmona v. Sw. Airlines Co.*, 536 F.3d 344 (5th Cir. 2008).

Doc. 52 at 1–2.

---

[3] *See* PLAINTIFF'S COMPLAINT FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT, VIOLATIONS OF THE NEW MEXICO HUMAN RIGHTS ACT, BREACH OF THE DUTY OF FAIR REPRESENTATION, VIOLATION OF THE COLLECTIVE BARGAINING AGREEMENT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, AND FOR INJUNCTIVE RELIEF (Doc. 1).
[4] *See* STIPULATION OF DISMISSAL (Doc. 53).
[5] *See* ORDER FOR SUPPLEMENTAL BRIEFING (Doc. 52).

On April 23, 2020, Plaintiff filed her supplemental brief.[6] In it, Plaintiff stipulated to the dismissal of her failure to accommodate and hostile work environment claims against Southwest. Doc. 54 at 1 n.1.[7] Plaintiff also stipulated to the dismissal of her claim for injunctive relief. *Id.*; Doc. 56 at 1. Accordingly, the only claims that remain before the Court are Plaintiff's claims of retaliation and disability discrimination against Southwest under the ADA and NMHRA. Southwest filed its supplemental brief on April 30, 2020, per the Court's Order.[8]

## STANDARD

A Rule 12(b)(6) motion "tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). In doing so, courts must "accept as true all well-pleaded factual allegations in a complaint and view [those] allegations in the light most favorable to the [non-moving party]." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). The allegations must "state a claim to relief that is plausible on its face." *Id.* (quoting *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "The claim is plausible only if it contains sufficient factual allegations to allow the court to reasonably infer liability." *Moya v. Garcia*, 895 F.3d 1229, 1232 (10th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The term "plausible" does not mean "likely to be true." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The factual allegations must "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555—i.e., "that discovery will reveal

---

[6] *See* PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO SOUTHWEST'S MOTION TO DISMISS (Doc. 54).
[7] *See also* STIPULATION OF DISMISSAL (Doc. 56).
[8] *See* DEFENDANT SOUTHWEST AIRLINES CO.'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS (Doc. 55).

evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). A mere "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally take the form of either facial or factual attacks. *See Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995). Facial attacks question "the sufficiency of the complaint[,]" and a district court reviewing facial attacks must accept the allegations in the complaint as true. *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). Factual attacks "go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Holt*, 46 F.3d at 1003. "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." *Id.*

Southwest's Motion takes the form of a facial attack, because it accepts the allegations contained in the Amended Complaint as true. *See* Mot. at 2–3. The Court notes, however, that Plaintiff has neglected to submit, along with her complaint, a copy of the CBA. Because the CBA is repeatedly referenced in the Amended Complaint and is central to the resolution of the Motion, the Court may properly consider it. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."). The Court's consideration of the CBA, however, does not convert Southwest's Rule 12(b)(1) motion into a motion for summary judgment. *See Holt*, 46 F.3d at 1003 (explaining that a Rule 12(b)(1) motion must be converted into a motion for

summary judgment if the district court considers evidence outside the pleadings and "subject matter jurisdiction is dependent on the same statute which provides the substantive claims in the case"); *GFF Corp.*, 130 F.3d at 1385 ("When a complaint refers to a document and the document is central to the plaintiff's claim, the plaintiff is obviously on notice of the document's contents, and this rationale for conversion to summary judgment dissipates.").

DISCUSSION

As recounted above, Plaintiff has two remaining claims against Southwest under both the ADA and NMHRA. First, she alleges that Southwest retaliated against her for engaging in a protected activity, and, second, she asserts that Southwest discriminated against her by refusing to grant her request for an accommodation. FAC at 7–11; *see also* Doc. 54 at 2.

I.   Preemption

Southwest argues that Plaintiff's claims are preempted by the Railway Labor Act and thus the Court lacks subject matter jurisdiction over them. Mot. at 6–11.[9] The Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, which also covers the airline industry, *see id.* at §§ 181-188, sets up a mandatory arbitral mechanism to handle disputes, *id.* at § 153(i). That "mandatory arbitral mechanism . . . [creates] two classes of disputes." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994).

> The first class, those concerning rates of pay, rules or working conditions, are deemed "major" disputes. Major disputes relate to the formation of collective [bargaining] agreements or efforts to secure them. The second class of disputes, known as "minor" disputes, gro[w] out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions. Minor disputes involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation.

---

[9] The Court notes that the proper terminology, with respect to Plaintiff's ADA claims, is preclusion, not preemption. *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 259 n.6 (1994) (describing "possible RLA preclusion of a cause of action arising out of a *federal* statute," as compared to "RLA pre-emption of a cause of action arising out of *state* law and existing entirely independent of the CBA." (emphasis in original)); *Carmona*, 536 F.3d at 347 n.2 (same). For purposes of this Memorandum Opinion and Order and for ease of reading, the Court will refer to both preclusion and preemption simply as "preemption."

512 U.S. at 252–253 (internal quotation marks and citations omitted). In other words, "major disputes seek to create contractual rights, minor disputes to enforce them." *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n* ("*Conrail*"), 491 U.S. 299, 302 (1989).

Minor disputes must be adjudicated under RLA mechanisms. *Norris*, 512 U.S. at 261. Therefore, "where the resolution of a state-law claim depends on an interpretation of the CBA, the claim is pre-empted" by the RLA. *Id.* "[T]he RLA's mechanism for resolving minor disputes," however, "does *not* pre-empt causes of action to enforce rights that are *independent* of the CBA." *Id.* at 256 (emphasis added). Thus, "the RLA's preemption of claims [is limited] to those involving the interpretation or application of a CBA." *Hirras v. Nat'l R.R. Passenger Corp.*, 44 F.3d 278, 281 (5th Cir. 1995) (internal quotation marks omitted).

With those principles in mind, the Court must look to "whether a claim has been made that the terms of an existing agreement either establish or refute the presence of a right to take the disputed action. The distinguishing feature of such a case is that the dispute may be conclusively resolved by interpreting the existing agreement." *Bhd. of Maint. of Way Employees Div. v. Burlington N. Santa Fe Ry. Co.*, 596 F.3d 1217, 1222–23 (10th Cir. 2010) (quoting *Conrail*, 491 U.S. at 305). To say "a minor dispute can be 'conclusively resolved' by interpreting the CBA is another way of saying that the dispute does not involve rights that exist independent of the CBA." *Norris*, 512 U.S. at 265. "The essence of the inquiry is whether the source of a party's asserted legal right is its collective bargaining agreement." *Bhd. of Maint. of Way Employees Div.*, 596 F.3d at 1223. If the source of that right is a collective bargaining agreement, the Court lacks subject matter jurisdiction over that claim. *See Bhd. of Maint. of Way Employees Div./IBT v. Union Pac. R.R. Co.*, 460 F.3d 1277, 1283 (10th Cir. 2006).

8

While the Supreme Court has not answered whether RLA preemption extends to federal causes of action, this circuit and others have adopted the position that "[t]he RLA preempts review . . . of *any* claims that require a court to interpret a collective bargaining agreement[.]" *Thompson v. Air Transp. Int'l Ltd. Liab. Co.*, 664 F.3d 723, 725 (8th Cir. 2011) (emphasis added). In other words, the RLA preemption analysis set forth in *Norris* applies to both state-law and federal-law claims. *See, e.g.*, *Adams v. Am. Airlines, Inc.*, 202 F.3d 281 (10th Cir. 2000) (unpublished table decision) (conducting an RLA preemption analysis with respect to the plaintiff's Title VII claim); *Carmona*, 536 F.3d at 347 (same in ADA and FMLA contexts) *Brown v. Illinois Cent. R.R. Co.*, 254 F.3d 654, 659 (7th Cir. 2001) (same in ADA context); *Saridakis v. United Airlines*, 166 F.3d 1272, 1277 (9th Cir. 1999) (same in ADA and FEHA contexts); *Ralph v. Lucent Techs., Inc.*, 135 F.3d 166, 171 (1st Cir. 1998) (same in ADA context).

The question for the Court is thus whether Plaintiff's claims of retaliation and disability discrimination—under the ADA and NMHRA—are major or minor disputes within the meaning of the RLA. The Court addresses Plaintiff's retaliation claims and disability discrimination claims separately below.

a.   Plaintiff's retaliation claims

Plaintiff alleges that Southwest placed her on unpaid leave, subjected her to a hostile work environment, and disciplined her in retaliation for engaging in a projected activity—namely, filing charges of discrimination with the EEOC and complaining of discrimination to Southwest. FAC at 8, 10.

In *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988), the Supreme Court held that a unionized employee's state retaliatory discharge claim was not preempted by the Labor

Management Relations Act ("LMRA"), 29 U.S.C. § 185, because the state law remedy was "independent" of the CBA. *Id.* at 407. Importantly, the Court reasoned that

> [e]ach of the[] purely factual questions [that compose of the state tort of retaliatory discharge] pertains to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement. To defend against a retaliatory discharge claim, an employer must show that it had a nonretaliatory reason for the discharge . . . this purely factual inquiry likewise does not turn on the meaning of any provision of a collective-bargaining agreement. Thus, the state-law remedy in this case is "independent" of the collective-bargaining agreement in the sense of "independent" that matters for [LMRA] pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement.

*Id.* (footnote omitted). The Court also held that even if dispute resolution under a CBA and under state law would require analysis of the identical set of facts, the claim is still considered to be "independent" of the CBA, if it can be resolved without interpreting the agreement. *Id.* at 409–10.

In *Norris*, the Supreme Court extended the reasoning from *Lingle* to the RLA context. *Norris*, 512 U.S. at 260 (explaining that RLA preemption "is virtually identical to the pre-emption standard the Court employs in cases involving § 301 of the LMRA"). There, the Supreme Court held that a state-law retaliatory discharge claim was not preempted by the RLA, because, like in *Lingle*, the resolution of the respondent's claim "require[d] only the purely factual inquiry into any retaliatory motive of the employer." *Id.* at 266.

Following the Supreme Court's lead, the Tenth Circuit has embraced the "important distinction between [an employer's] contractual rights to take the actions it did and the *motivations* behind them." *Mowry v. United Parcel Serv.*, 415 F.3d 1149, 1156 (10th Cir. 2005) (emphasis in original) (quoting *Garley v. Sandia Corp.*, 236 F.3d 1200, 1213 (10th Cir. 2001)).[10] Accordingly, the Tenth Circuit has explained that "it is not necessary to look to collective

---

[10] *Mowry*, like *Lingle*, involves preemption in the context of the LMRA. 415 F.3d at 1156.

bargaining agreements in order to decide retaliatory discharge claims." *Mowry*, 415 F.3d at 1155. This is true "[s]o long as the . . . cause of action is concerned not with the employer's contractual right to discharge the employee, but rather with its motives in exercising that right, the CBA is not relevant and preemption does not apply." *Jarvis v. Nobel/Sysco Food Servs. Co.*, 985 F.2d 1419, 1427 (10th Cir. 1993). Likewise, other circuits have reached similar conclusions. *See, e.g.*, *Hughes v. United Air Lines, Inc.*, 634 F.3d 391, 394 (7th Cir. 2011) ("Putting *Lingle* together with [*Norris*] means that the RLA does not completely preempt retaliatory-discharge suits."); *Martin Marietta Corp. v. Maryland Comm'n on Human Relations*, 38 F.3d 1392, 1402 (4th Cir. 1994) (explaining that "the state law tort of retaliatory discharge creates rights independent of those provided under the CBAs").

The Court concludes that Plaintiff's retaliation claims do not require the interpretation of the CBA, are thus not minor disputes under the RLA, and, therefore, are not preempted by the RLA. *See Davies v. Am. Airlines, Inc.*, 971 F.2d 463, 468 (10th Cir. 1992) (holding that a state-law claim of wrongful termination was not a minor dispute within the meaning of the RLA, and thus was not preempted). Indeed, to establish a prima facie case of retaliation under the ADA and NMHRA, a plaintiff must prove that: (1) she "engaged in a protected activity;" (2) she was "subjected to [an] adverse employment action subsequent to or contemporaneous with the protected activity;" and (3) there was "a causal connection between the protected activity and the adverse employment action." *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186–87 (10th Cir. 2016) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999) (reciting the elements of an ADA retaliation claim); *see also Juneau v. Intel Corp.*, 127 P.3d 548, 552 (N.M. 2005) (describing the prima facie case for retaliation under the NMHRA). Like *Lingle* and *Norris*, none of these inquires require an interpretation of the CBA. Instead, the focus is a

factual determination of "the conduct of the employee and the conduct and motivation of the employer." *Lingle*, 486 U.S. at 407.

Furthermore, that Southwest may have had "just cause" for placing Plaintiff on unpaid leave under the terms of the CBA is of no matter. "Even if the employee violated the employer's rules, giving the employer 'just cause' to discharge him, the question is whether the employer's motivation for the discharge was the rule violation or retaliation for an activity protected by the retaliatory discharge law." *Davies*, 971 F.2d at 466. What matters is that "the CBA is not the 'only source' of [the employee's] right not to be discharged wrongfully." *Norris*, 512 U.S. at 258. Such is the case with respect to Plaintiff's retaliation claims.

Because the Court concludes that Plaintiff's retaliation claims are not minor disputes under the RLA, those claims are not preempted, and the Court has subject matter jurisdiction over them.

    b.  Plaintiff's disability discrimination claims

The same is not true for Plaintiff's disability discrimination claims. To establish a prima facie case of employment discrimination under the ADA and NMHRA, Plaintiff must prove that (1) she "is disabled within the meaning of the [statute];" (2) she "is qualified to perform the essential functions of [her] job with or without accommodations;" and (3) she "was terminated under circumstances which give rise to an inference that the termination was based on [her] disability." *Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 544 (10th Cir. 2014); *see also Trujillo v. N. Rio Arriba Elec. Co-op, Inc.*, 41 P.3d 333, 338 (N.M. 2001) (adopting the elements of an ADA disability discrimination claim for the same claim under the NMHRA).

The Tenth Circuit employs "a two-part analysis for determining whether a person is qualified under the ADA." *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1123 (10th Cir. 1995). First,

the court "must determine whether the individual could perform the essential functions of the job." *White v. York Int'l Corp.*, 45 F.3d 357, 361 (10th Cir. 1995). Second, if, and only if, the court concludes "that the individual is not able to perform the essential functions of the job," the court "must determine whether any reasonable accommodation by the employer would enable [her] to perform those functions." *Id.* at 361–62.

Southwest asserts that the issue of whether Plaintiff is a "qualified individual with a disability"—in particular, whether she could perform the essential functions of her job—is a minor dispute that is based on the interpretation of the CBA. Mot. at 7–8. Essential functions are those that "bear more than a marginal relationship to the job at issue." *White*, 45 F.3d at 361. And "terms of any collective bargaining agreement" are relevant to determining whether a job requisite is essential. *Milton*, 53 F.3d at 1124. That said, the mere relevance of a CBA is not enough to deprive the Court of jurisdiction over a claim. *See Carmona*, 536 F.3d at 349 (holding that because "provisions of the CBA are relevant to, but *not* dispositive of, the resolution of Carmona's claims, his claims do not constitute a minor dispute under the RLA." (emphasis in original)). The essential inquiry is whether the Court must interpret the CBA to resolve the dispute. *See id.* at 349–350.

Recall, Plaintiff's disability discrimination claims are premised on Southwest's refusal to grant her requested accommodation: that she be assigned a maximum of eight hours of work per day with no overtime. FAC at 3. The CBA provides a description of the customer representative position. Doc. 31-1 at 3 (Article 5). It further outlines the mechanics for determining overtime, seniority, and shift bidding. *See* Doc. 31-1 at 8–34 (Articles 6, 7, and 8). For example, the CBA provides that "[i]f a sufficient amount of overtime is not voluntarily obtained . . . the Company shall require employees to work overtime. It shall be assigned as continuous with overtime

first . . . as outlined in subparagraph B and subsequently in reverse order of seniority[.]" Doc. 31-1 at 24. Thus, in order for the Court to determine whether working overtime is an essential function of the customer service representative position, the Court would be required to interpret that language from the CBA. *Cf. Reece v. Houston Lighting & Power Co.*, 79 F.3d 485, 487 (5th Cir. 1996) (holding that the plaintiff's discrimination claim was preempted where it "turn[ed] on questions of promotion, seniority, and assignment to training programs, all of which are provided for in the CBA.").

The Court thus concludes that the resolution of Plaintiff's disability discrimination claims is inextricably intertwined with the CBA. Plaintiff cannot establish her prima facie case without an understanding of the essential functions of her job, which would require the Court to interpret provisions of the CBA. And even if Plaintiff could establish the prima facie case for disability discrimination, Southwest would undoubtedly rely on the terms of the CBA to show that it had a non-discriminatory basis for its conduct. This dispute is thus grounded in the CBA. *See Emswiler v. CSX Transp., Inc.*, 691 F.3d 782, 793 (6th Cir. 2012) (affirming the district court's dismissal of disability discrimination claim, where resolution of the claim required interpretation of the collective bargaining agreement). The Court concludes that Plaintiff's disability discrimination claims are minor disputes under the RLA. As such, the Court lacks subject matter jurisdiction over those claims and will dismiss them without prejudice. *See Herrera v. Las Cruces Pub. Sch.*, 695 F. App'x 361, 373 (10th Cir. 2017) ("A dismissal for lack of subject matter jurisdiction generally is without prejudice under both federal law and New Mexico law.").

## II.  Southwest's remaining arguments

Having established that the Court has subject matter jurisdiction over Plaintiff's retaliation claims, the Court will proceed to address Southwest's remaining arguments for

dismissal. Southwest asserts that Plaintiff is not a "qualified individual" under the ADA or NMHRA and that it was not obligated to act inconsistent with the CBA in order to accommodate Plaintiff. Mot. at 15–20.[11] The Court concludes that neither of Southwest's remaining arguments are availing.

First, the prima facie case of retaliation under both statutes does not require a showing that Plaintiff is a "qualified individual." *See Foster*, 830 F.3d at 1186–87; *Juneau*, 127 P.3d at 552. Second, at this stage, Southwest's obligations under the CBA are irrelevant to Plaintiff's retaliation claims.[12] Indeed, none of the elements required to plead a prima facie case of retaliation are impacted by Southwest's assertion that its actions were justified. *Davies*, 971 F.2d at 466 (explaining that even if an employer had "just cause" to terminate an employee, the focus of a retaliation claim is "the employer's motivation for the discharge").

IT IS THEREFORE ORDERED THAT DEFENDANT SOUTHWEST AIRLINES CO.'S MOTION TO DISMISS AND BRIEF IN SUPPORT (Doc. 31) is GRANTED IN PART as to Plaintiff's claims of disability discrimination under the ADA and NMHRA, which are dismissed without prejudice, and DENIED IN PART as to Plaintiff's claims of retaliation under the ADA and NMHRA.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[11] Southwest also argued that Plaintiff's failure to accommodate claim was time-barred. Mot at 12–15. Because Plaintiff stipulated to the dismissal of that claim, the Court will not address that argument by Southwest. *See* Doc. 54 at 1 n.1; Doc. 56 at 1.

[12] Notably, Southwest's argument on this point is targeted at Plaintiff's failure to accommodate claim, which is no longer before the Court. *See* Mot. at 17–20 ("Neither the ADA nor NMHRA required Southwest violate the CBA in order to provide an employee an accommodation.").