UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

KRISANNE HASKEW,

    Plaintiff,

vs.                                                                         Civ. No. 19-732 JAP/LF

SOUTHWEST AIRLINES CO. and
IAM AIR TRANSPORT DISTRICT 142,
a/k/a DISTRICT LODGE 142 OF THE
INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE
WORKERS AFL-CIO,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On September 29, 2020, Defendant Southwest Airlines Co.[1] filed DEFENDANT SOUTHWEST AIRLINES CO.'S MOTION TO DISMISS (Doc. 75) ("Motion").[2] Defendant moves to dismiss PLAINTIFF'S FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT, VIOLATIONS OF THE NEW MEXICO HUMAN RIGHTS ACT, BREACH OF THE DUTY OF FAIR REPRESENTATION, AND FOR INJUNCTIVE RELIEF (Doc. 28) ("FAC"). Specifically, Defendant moves to dismiss with prejudice Plaintiff's claims of retaliation under the Americans with Disabilities Act, 42 U.S.C. 12101 *et seq*., ("ADA") and the New Mexico Human Rights Act, NMSA 28-1-7(A),

---

[1] Defendant Southwest is the sole remaining Defendant in this civil action. *See* Doc. 53 ("Plaintiff Krisanne Haskew and IAM Air Transport District 142, a/k/a District Lodge 142 of the International Association of Machinists and Aerospace Workers AFL-CIO . . . stipulate to the dismissal of all Plaintiff's claims against IAM in the above-styled civil action with prejudice.").

[2] The Motion is fully briefed. *See* PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS (Doc. 76); DEFENDANT SOUTHWEST AIRLINES CO.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS (Doc. 81).

("NMHRA").[3]  After careful consideration of the pertinent law and the parties' briefing, the Court will grant the Motion.

## I. FACTUAL BACKGROUND[4]

In February 1993, Defendant hired Plaintiff to work as a customer service representative at its Albuquerque call center.  FAC ¶ 13.  In 2002, Plaintiff suffered a left shoulder injury, and in 2010, this injury was classified as an on-the-job injury.  *Id*. ¶¶ 17–18.  On September 17, 2015, after undergoing three shoulder surgeries and upon a doctor's recommendation, Plaintiff completed a Southwest Airlines ADA Medical Information Form, in which she requested an accommodation that she be assigned a maximum of eight hours of work per day with no overtime.  *Id*. ¶¶ 20–25.  Plaintiff submitted a doctor's note in support of this request.  *Id.*

On October 16, 2015, Defendant denied Plaintiff's accommodation request and informed her that working overtime for extended periods during peak workloads is an essential function of the customer service representative position.  *Id*. at ¶ 26.  However, Defendant also apprised Plaintiff that, in order to avoid working more than eight hours, she could trade shifts or give away shifts in accordance with her Collective Bargaining Agreement ("CBA"), or alternatively, she could request a leave of absence.  *Id*. ¶ 28.  Plaintiff then began trading shifts, giving away shifts, and using vacation leave to avoid working overtime.  *Id*. ¶ 29.

On March 24, 2016, Defendant notified all customer service representatives that worked

---

[3] Plaintiff's retaliation claim against Defendant Southwest is the only remaining claim in this case.  *See* Doc. 53 (stipulation of dismissal of all claims against Defendant IAM Air Transport District 142), Doc. 56 (stipulation of dismissal of all claims under the ADA and the NMHRA except for Plaintiff's retaliation and discrete act claims), Doc. 57 (May 22, 2020, Memorandum Opinion and Order dismissing Plaintiff's claims of disability discrimination under the ADA and NMHRA).

[4] The Court accepts as true the factual allegations in the FAC for the purposes of deciding a motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The Court does not, however, accept as true any legal conclusions within the FAC.  *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

in its Albuquerque call center that they could be scheduled to work mandatory overtime five or more days a week. *Id*. ¶ 30. Shortly after, on March 28, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), accusing Defendant of disability discrimination for denying her accommodation request. *Id*. ¶ 31.

On August 19, 2016, Defendant informed Plaintiff that it was placing her on unpaid leave because she could not work more than eight hours a day. *Id*. ¶ 33. At this time, Defendant also directed Plaintiff to return her employee badge. *Id*. ¶ 34. In response, Plaintiff emphasized that she did not want to be placed on leave but rather preferred to continue working as long as she was scheduled for only eight hour shifts with no overtime. *Id*. ¶ 36. Plaintiff also informed her supervisors that she wanted to continue to work. *Id*. ¶ 38 Defendant did not respond to Plaintiff. *Id*. ¶ 39.

On August 25, 2016, Plaintiff filed a second EEOC Charge of Discrimination against Defendant, asserting that Defendant placed her on leave in retaliation for filing her first EEOC Charge. *Id*. ¶ 43. On September 2, 2016, Defendant advised Plaintiff to provide a doctor's note for each medical appointment that she attended, and Plaintiff complied. *Id*. ¶ 44. Also during September 2016, Plaintiff (1) resigned from her post as Defendant's representative on the Board of Directors for the Ronald McDonald House and (2) underwent a fourth surgery on her left shoulder. *Id*. ¶¶ 45–46.

On October 5, 2016, Defendant began paying Plaintiff out of her accrued sick leave until it was exhausted. *Id*. ¶ 47. Then, in November 2016, Defendant advised Plaintiff that it would no longer cover her under its insurance plan. *Id*. ¶ 48. Defendant also notified Plaintiff in November 2016 that it was considering her a no-show for that month because she had failed to submit a doctor's note excusing her from work. *Id*. ¶ 49. Plaintiff alleges that she submitted the doctor's

note at the beginning of the month, but nonetheless resubmitted it a second time. *Id.* ¶ 50.

On April 6, 2017, Plaintiff filed her third Charge of Discrimination with the EEOC, alleging continued disability discrimination and retaliation. *Id.* ¶ 51. Later that year, on August 16, 2017, Plaintiff underwent her fifth shoulder surgery. *Id.* ¶ 54. Approximately a year later, in August 2018, Defendant advised Plaintiff that she had accumulated "no contact no shows" and issued her written discipline, despite Plaintiff's continued submission of doctor's notes. *Id.* ¶ 55.

In November 2018, the EEOC determined that reasonable cause existed that Defendant retaliated against Plaintiff for engaging in protected activity. *Id.* ¶ 59. On May 14, 2019, the EEOC issued a Notice of Right to Sue. *Id.* ¶ 60.

## II.     LEGAL STANDARD

A Rule 12(b)(6) motion "tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). In doing so, courts must "accept as true all well-pleaded factual allegations in a complaint and view [those] allegations in the light most favorable to the [non-moving party]." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). The allegations must "state a claim to relief that is plausible on its face." *Id.* (quoting *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)). "The claim is plausible only if it contains sufficient factual allegations to allow the court to reasonably infer liability." *Moya v. Garcia*, 895 F.3d 1229, 1232 (10th Cir. 2018) (citing *Iqbal*, 556 U.S. 662, 678 (2009)). The term "plausible" does not mean "likely to be true." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The factual allegations must "raise a right to relief above the speculative level,"

To establish a claim of retaliation under the ADA and NMHRA, Plaintiff "must prove that (1) [s]he 'engaged in a protected activity'; (2) [s]he was 'subjected to [an] adverse employment action subsequent to or contemporaneous with the protected activity'; and (3) there was 'a causal connection between the protected activity and the adverse employment action.'" *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186–87 (10th Cir. 2016) (bracket in original) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999)); *see also Juneau v. Intel Corp.*, 127 P.3d 548, 552 (N.M. 2006) (same).

### B. Parties' Arguments

Defendant argues that Plaintiff's "retaliation claim fails because the facts pled in the FAC do not raise the question of causation above the speculative level." Mot. at 4. Defendant asserts that the retaliation claim "is based solely on the fact [Plaintiff] complained to the EEOC, and she was placed on leave," which occurred "five months after she filed the EEOC charge." *Id*. at 5. Defendant maintains that this five-month gap "between protected activity and [] adverse employment action is insufficient temporal proximity to adequately establish causation." *Id*. Therefore, according to Defendant, to survive its Motion the FAC must assert "additional evidence beyond temporal proximity to establish causation." *Id*. (internal quotations and citation omitted). Defendant believes that the FAC "contains no such allegations of fact." *Id*. Among other things, Defendant relies on *Khalik v. United Air Lines*, 671 F.3d 1188 (10th Cir. 2012) for this proposition. *Id*.

For her part, Plaintiff attempts to alter her alleged theory of retaliation under the ADA and NMHRA. Plaintiff now argues that her "retaliation claim is not based on the fact that she complained to the EEOC and then she was placed on leave. But rather her claim is based on the fact that the Plaintiff was following the CBA to 'give away mandatory overtime' and that

6

[Defendant] used that protected activity against her by blocking and condemning her allowable options outlined in the CBA." Resp. 11. Although Plaintiff is now proceeding *pro se*,[5] the Court is puzzled by this about-face because this new argument would foreclose her claim of retaliation under the ADA and NMHRA. Under the circumstances of this case, Plaintiff exercising her rights in accordance with the CBA is not protected activity.[6] But even if it were, on a 12(b)(6) motion the Court is confined to considering only the allegations in the FAC, which here explicitly alleges that Defendant retaliated against Plaintiff for "engag[ing] in protected activity under the ADA including but not limited to filing charges of discrimination with the EEOC and complaining of discrimination." FAC ¶ 76. Consequently, the Court will address only the theory explicitly alleged in the FAC.

### C. Plaintiff Fails to Plead a Plausible Claim of Retaliation

At bottom, the FAC alleges that (1) as of 2010, Plaintiff had an injury that was classified as on-the-job; (2) on September 17, 2015, Plaintiff made an accommodation request that she be assigned a maximum of eight hours of work per day with no overtime and included a doctor's note

---

[5] On July 10, 2020, The Court granted Plaintiff's attorneys' OPPOSED MOTION TO WITHDRAW (Doc. 61). The Court found that a fundamental disagreement existed between Plaintiff and her attorneys. *Id*.

[6] *See Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186 (10th Cir. 2016) ("The ADA's retaliation statute provides that '[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.'" (quoting 42 U.S.C. § 12203(a))). Upon this Court's review of the statute and case precedent, trading shifts under a collective bargaining agreement falls short of protected conduct and does not constitute specifically engaging in an activity to oppose an employer's discriminatory practices. This especially holds true when it was Defendant who "advised Plaintiff that, when she was scheduled to work more than eight hours, she should could trade shifts or give away her shifts pursuant to her respective Collective Bargaining Agreement, or request a leave of absence." FAC ¶ 28. Furthermore, there are simply no fact assertions that support a plausible nexus between Plaintiff exercising her rights under the CBA and Defendant placing her on unpaid leave. In sum, the FAC only establishes that on October 16, 2015, Defendant reminded Plaintiff of her rights under the CBA and approximately *ten months later* Plaintiff was placed on leave. Anything more is pure conjecture.

in support; (3) on October 16, 2015, Defendant denied Plaintiff's accommodation request; (4) on March 24, 2016, Defendant notified all customer service representatives in its Albuquerque call that they could be scheduled for significant mandatory overtime; (5) on March 28, 2016, Plaintiff filed her first Charge of Discrimination based on her September 2015 accommodation request; (6) on August 19, 2016, Defendant placed Plaintiff on unpaid leave; (7) on August 25, 2016, Plaintiff filed a second Charge of Discrimination, alleging that she was placed on unpaid leave as retaliation for filing her first EEOC charge;  (8) on April 6, 2017, Plaintiff filed a third Charge of Discrimination; and (9) in August 2018, despite Plaintiff's continued submission of doctor's notes, Defendant advised Plaintiff that she had accumulated "no contact no shows" and issued her written discipline.

Beginning with protected conduct, an adequate request for an accommodation and filing an EEOC charge both individually qualify.  *Foster*, 830 F.3d at 1187 (discussing requests for accommodation); *see also Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1207 (10th Cir. 2007) (EEOC complaints are protected activity).  Likewise, being placed on unpaid leave is an adverse employment action.  *See Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998) (discussing adverse employment action).  However, as Defendant rightfully argues, the FAC includes insufficient factual assertions that make it plausible that Defendant placed Plaintiff on unpaid leave in retaliation for either requesting an accommodation or filing an EEOC charge.

A claim of retaliation requires "that a causal connection existed between the protected activity and the materially adverse action." *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008).  "A causal connection is established where the plaintiff presents evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Garrett v. Hewlett–Packard Co.*, 305 F.3d 1210, 1221 (10th Cir.

8

2002) (internal quotations omitted). Without "very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001); *see also Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (ruling that a three month period, standing alone, is insufficient to establish causation on a retaliation claim). "[O]ther evidence in the record could establish an adverse employment action taken after a lengthy period of time was still in response to the earlier, protected activity." *Piercy v. Maketa*, 480 F.3d 1192, 1199 (10th Cir. 2007).

Here, the FAC does not include allegations that establish a very close temporal proximity. Tellingly, Plaintiff made the request for accommodation *eleven months* before being placed on unpaid leave. In turn, Plaintiff filed the EEOC charge approximately *five months* before Defendant placed her on unpaid leave. Simply put, a five-month temporal gap is insufficient to establish causation, let alone an eleven-month period. *Anderson*, 181 F.3d at 1179 ("[W]e have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation.") (internal citation omitted); *see also See Hall v. Interstate Brands Corp.*, 395 F. App'x 519, 522 (10th Cir. 2010) (unpublished) (three-month gap insufficient to establish causation) (citing cases). Thus, the FAC must allege additional factual assertions to establish a plausible causal connection.

On this front, Defendant relies on *Khalik* to demonstrates that the FAC omits the requisite

fact assertions necessary to infer causation.[7]  In *Khalik*, the plaintiff brought a claim for retaliation under Title VII.  671 F.3d at 1193.  The court took the following facts as true:

> (1) Plaintiff is an Arab–American who was born in Kuwait; (2) Plaintiff's religion is Islam; (3) Plaintiff performed her job well; (4) Plaintiff was grabbed by the arm in the office; (5) Plaintiff complained internally about discrimination; (6) Plaintiff also complained internally about being denied FMLA leave; (7) Plaintiff complained about an email that described a criminal act; and (8) Defendant terminated Plaintiff's employment position.

*Id*.  The court concluded that these allegations did not "sufficiently allege discrimination or retaliation" because, among other things, "there is no nexus between the person(s) to whom she complained and the person who fired her," "there is nothing other than sheer speculation to link the arm-grabbing and/or termination to a discriminatory or retaliatory motive," and the plaintiff alleged "nothing that would link her request for FMLA leave, which she provides no details about, to her termination."  *Id*. at 1194.  In sum, the court determined that the plaintiff's claims "were based solely on the fact that she is Muslim and Arab–American, that she complained about discrimination, that she complained about the denial of FMLA leave, and that Defendant terminated her."  *Id.*

With this guidance, it is plain that Plaintiff does not establish a causal connection between the accommodation request or EEOC charge and being placed on unpaid leave.  In all, the FAC merely alleges two elements (1) protected activity (the accommodation request and the EEOC charge) and (2) adverse employer action (Defendant placed Plaintiff on unpaid leave five or eleven months later, depending on the protected conduct).  The FAC does not allege, however, any

---

[7] In its discussion of *Khalik* and causation, Defendant references the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  As recently explained by the Supreme Court, that test is inapplicable to a 12(b)(6) motion.  *See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) ("For its part, *McDonnell Douglas* sought only to supply a tool for assessing claims, typically at summary judgment, when the plaintiff relies on indirect proof of discrimination . . . So *McDonnell Douglas* can provide no basis for allowing a complaint to survive a motion to dismiss when it fails to allege essential elements of a plaintiff's claim.").

conduct that occurred in the interim nor does it include assertions that connect the individuals with knowledge of Plaintiff's accommodation request or EEOC charge to the decisionmaker(s) that placed her on unpaid leave, both of which could establish a plausible nexus.  Like *Khalik*, Plaintiff's retaliation claim is based solely on the fact that she engaged in protected conduct and was placed on leave.

Furthermore, even if the Court expands Plaintiff's theory and considers additional allegations of protected conduct and adverse employment action that occurred after Defendant placed Plaintiff on unpaid leave, a plausible causal connection still cannot be established.[8]  To be sure, on August 25, 2016, Plaintiff made her second Charge of Discrimination against Defendant, in which she identified being place on leave as retaliation for filing the first charge.  The only allegations of Defendant's conduct that occurred after the second EEOC charge include: (1) on September 2, 2016, Defendant told Plaintiff to provide a doctor's note for each medical appointment she attended; (2) on October 5, 2016, Defendant began paying Plaintiff out of her accrued sick leave; (3) on November 4, 2016, Defendant notified Plaintiff that she would no longer be covered under its insurance plan; and (4) on November 30, 2016, Defendant left a message advising Plaintiff that she had not submitted a doctor's note for November 2016.  When viewing these allegations in totality, it is implausible that Defendant retaliated against Plaintiff for filing the second EEOC Charge or that any of these actions individually qualify as adverse employment action, especially when Plaintiff had already been placed on unpaid leave.

For example, Defendant informed Plaintiff that it would not cover her under its insurance—

---

[8] To be clear, Plaintiff narrowed her retaliation claim against Defendant to one of retaliation for being placed on unpaid leave.  *See* Doc. 56 (Plaintiff dismissed "[a]ll claims under the ADA and the NMHRA EXCEPT FOR Plaintiff's retaliation [] claim[] for being placed on unpaid leave in August 2016").

i.e., the only allegation that could even be considered adverse—approximately *three months after* Plaintiff was both placed on unpaid leave and filed her second EEOC Charge.  Given that this three-month gap standing alone cannot establish causation, *Anderson*, 181 F.3d at 1179, Plaintiff now needs to make additional non-conclusory allegations to support a nexus between the second EEOC charge and Plaintiff losing her insurance.  But as stated above, the FAC does not include these additional supporting facts.  The Court is simply left to guess how the two are connected.

The same holds true for Plaintiff's third Charge of Discrimination, which she made on April 6, 2017.  Approximately *sixteen months* later, in August 2018, Defendant advised Plaintiff that she had accumulated "no contact no shows" and issued her written discipline despite Plaintiff's continued submittal of doctor's notes.  Even assuming that Defendant's conduct constituted an adverse employment action, which it likely was not,[9] a sixteen-month interval without additional fact assertions makes any causal connection implausible.  And Plaintiff again fails to cure the infirmity by alleging additional facts.

Lastly, Plaintiff also cannot demonstrate a plausible inference of causation through a pattern of retaliatory conduct.  In total, Plaintiff (1) made an accommodation request, (2) filed on EEOC charge, (3) was placed on unpaid leave five months after the charge, (4) filed a second EEOC charge while on unpaid leave, (5) lost insurance benefits three months later after being

---

[9] When addressing adverse action in the disciplinary context, the Tenth Circuit has noted:

> Disciplinary proceedings, such as warning letters and reprimands, can constitute an adverse employment action.  A reprimand, however, *will only constitute an adverse employment action if it adversely affects the terms and conditions of the plaintiff's employment* -- for example, if it affects the likelihood that the plaintiff will be terminated, undermines the plaintiff's current position, or affects the plaintiff's future employment opportunities

*Medina v. Income Support Div.*, 413 F.3d 1131, 1137 (10th Cir. 2005) (emphasis added) (citations omitted). Here, Plaintiff merely alleges that she received written discipline but does not assert that it would adversely affect the terms and conditions of her employment.

placed on unpaid leave, (6) filed a third EEOC charge, and (7) sixteen months later received written discipline for failing to submit doctor's notes. These alleged adversarial blips, even when viewed collectively and accepted by this Court as adverse employment action under the ADA and NMHRA, are far too attenuated to lead to an inference of retaliation. *See Meiners v. Univ. of Kansas*, 359 F.3d 1222, 1232 (10th Cir. 2004) ("Two instances, one of which is not even an independently adverse action, that occur four months apart do not constitute a particularly impressive 'pattern of retaliatory conduct.' In addition, the pattern did not begin soon after Dr. Meiners engaged in protected activity, as almost four months elapsed between the filing of the KHRC complaint and the denial of graduate faculty status. This so-called "pattern" therefore does not support an inference of a causal connection.").

## IV.   CONCLUSION

IT IS ORDERED that DEFENDANT SOUTHWEST AIRLINES CO.'S MOTION TO DISMISS (Doc. 75) is GRANTED and Plaintiff's First Amended Complaint (Doc. 28) is DISMISSED.

_____
SENIOR UNITED STATES DISTRICT JUDGE